SNELL v. COMMISSIONER OF INTERNAL REVENUE.

No. 8731.

Circuit Court of Appeals, Fifth Circuit.

July 5, 1938.

892

Geo. E. H. Goodner, of Washington, D. C., for petitioner.

John J. Pringle, Jr., Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., James W. Morris, Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Leslie H. Rushbrook, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

This case concerns income taxes for the years 1924 to 1927 inclusive, the Board of Tax Appeals having denied the taxpayer the benefit of the capital net gains rates provided in the Revenue Acts of 1924 and 1926, 43 Stat. 253, 44 Stat. 9, even as to profits realized during the tax years on instalment sales made in the year 1923. The gains all arose from sales of land near St. Petersburg, Florida, which had been held by the taxpayer for more than two years. The Revenue Act of 1921, Sect. 206(a) (6), 42 Stat. 232, had included in capital assets "property acquired and held by the taxpayer for profit or investment for more than two years (whether or not connected with his trade or business), but [not] * * * stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year." The Revenue Acts of 1924 and 1926 in Section 208(a) (8), 43 Stat. 262, 44 Stat. 19, added to the express words of exclusion, "or property held by the taxpayer primarily for sale in the course of his trade or business." The Board held that this taxpayer in all the years 1923 to 1927 inclusive was in the business of selling lots, and that the lands subdivided and sold by him were held primarily for sale in the course of that business, but that such lands were not a "stock in trade", nor proper to be "included in an inventory" within the meaning of the Act of 1921; so that as to gains realized from their sale in 1923 the capital gains rate applied at the taxpayer's election; but that the gains taxable under the later Acts were not to be so treated. The taxpayer here contends that the evidence does not authorize the Board's finding that he was "actively and continuously engaged in the development and sale of real estate;" and that the deferred instalments of 1923 sales should be taxed under the same rule as the cash payments.

Land held over two years before it is sold may be treated ordinarily as a capital asset. But when held primarily for sale in the course of the taxpayer's business it is excluded under the Revenue Acts of 1924 and 1926. This taxpayer must, to defeat his claim to a capital gains rate, have been in the business of selling his lands. An occasional sale of land held as an investment is not such a business though profit results. The word, notwithstanding disguise in spelling and pronunciation, means busyness; it implies that one is kept more or less busy, that the activity is an occupation. It need not be one's sole occupation, nor take all his time. It may be only seasonal, and not active the year round. It ordinarily is implied that one's own attention and effort are involved, but the maxim qui facit per alium facit per se applies, and

one may carry on a business through agents whom he supervises. The present taxpayer therefore does not demonstrate that he was not engaged in the business of selling lands because he also rented his buildings and operated a golf course; nor because he was usually absent from Florida for five months in the year when there was no business activity in St. Petersburg; nor because he made most of his sales through brokers as his agents. We lay no great stress on his activities prior to 1923, though these may give color and background to what he was doing during the tax years. If for instance he had been active in land business in 1920, but in 1923 had discontinued his business and simply sold off the remnants of his land, it might be that these remnants would no longer be held for sale in the course of his business. It appears here that the taxpayer in partnership with another, had from 1910 to 1913 engaged very actively in buying waste land adjacent to St. Petersburg, subdividing and improving it, and selling it as city lots. About 1919, that business having about ceased, the partnership's holdings all came to the hands of the taxpayer. He forced some profitless sales in 1920 to pay taxes. In 1923, however, the great Florida boom took shape and continued till 1927. During those years by far the greater portion of the taxpayer's gains came from land sales, about $82,000 being reported for 1923, $534,000 for 1924, $991,000 for 1925, and $196,000 for 1926. He maintained an office in charge of a secretary, where he platted his subdivisions and fixed the prices on his lots, and settled with his brokers. He made some sales himself. His renting and golf links business was also there transacted. He was a member of state and national associations of realtors, and was looked upon locally as a very influential real estate man. We think the Board was justified in the conclusion that he was holding these lands for sale in the course of his business during the tax years. The fact that he bought no additional lands during this period does not prevent his activities being a business. He merely had enough land to do a large business without buying any more. He was not reselling land in the condition in which he bought it, but was subdividing and platting it and sometimes improving it, so as to make wild lands into town lots, thus adding the business element of development. All was done with such purpose, system and continuity as well to constitute it a business.

As to the instalment sales made in 1923, the taxpayer might have elected to take his whole profit then and have had it taxed under the Revenue Act of 1921. He chose to defer realization of the profits on the deferred instalments. These thereby were left to fall under such provisions of the law as might be of force at their maturity. That the law might be changed, not only in the tax rate but in any other of its provisions, was a risk the taxpayer took. in deferring the realization of his gains. The Board rightly applied to them the law as it stood when the gains became taxable.

Judgment affirmed.