ZOLA KLEIN AND FLORENCE KLEIN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3157–62. Filed August 31, 1964.

*Leonard Boreman*, for the petitioners.
*Hobart Richey*, for the respondent.

OPINION

BLACK, *Judge:* The Commissioner has determined deficiencies in petitioners' income tax and additions to tax under sections 6653(a) and 6651(a), I.R.C. 1954, for the years 1957, 1958, 1959, and 1960.

The adjustments to taxable income for 1957 included: "(a) Income from sale of partnership assets and interest $33,169.38." Other adjustments were also made but there is no need to mention them in detail here because they are not in issue. Adjustment (a) is explained in the deficiency notice as follows:

(a) It is determined that monies totaling $60,000.00, received by you in the year 1957, in connection with the sale of your interest in the partnership, Standard Real Estate Company, constitute ordinary income to the extent of $44,226.00. Inasmuch as you reported a long-term capital gain in your 1957 return in the amount of $11,056.62, your taxable income has been increased by the amount of $33,169.38 computed as follows:

[Here follows the computation schedule showing additional income of $33,-169.38.]

Similar adjustments as the above, except as to amounts, were made for the other taxable years, 1958, 1959, and 1960.

Petitioners, by appropriate assignments of error, contest the correctness of the foregoing adjustments.

All the facts were stipulated and there was one exhibit attached to the stipulation. We incorporate herein the portion of the stipulation of facts germane to the single issue presented, together with the exhibit attached thereto, as follows:

1. Petitioners are husband and wife, and, during the periods here involved, resided in Pittsburgh, Pennsylvania.

2. Petitioners filed income tax returns for the taxable years 1957, 1958 and 1959 with the District Director of Internal Revenue at Pittsburgh, Pennsylvania; petitioners did not file an income tax return for the taxable year 1960. Petitioners reported income on a cash basis at all times referred to herein.

\*　　　\*　　　\* .　　　\*　　　\*　　　\*　　　\*

5. The deficiencies as determined by respondent are in income taxes for the calendar years 1957 to 1960 inclusive, and additions to tax for said years, as follows:

| Year | Deficiency | Additions to tax | |
|---|---|---|---|
| | | Sec. 6653(a) | Sec. 6651(a) |
| 1957 | $20,984.63 | $1,049.23 | |
| 1958 | 2,011.18 | 100.56 | |
| 1959 | 6,189.90 | 309.50 | |
| 1960 | 1,241.12 | 68.31 | $310.28 |
| Total | 30,426.83 | 1,527.60 | 310.28 |

6. On January 1, 1952, petitioner, Zola Klein, was a partner in a partnership known as Standard Real Estate Company. On that same date, petitioner, Florence Klein, also held an interest in Standard Real Estate Company in the sum of $22,991.83. Both interests had been held by petitioners Zola and Florence Klein for a period in excess of six months as of January 1, 1952.

7. Attached hereto and marked Exhibit "1" is a copy of an agreement dated January 1, 1952 executed by Zola Klein, Florence Klein, Benjamin Klein, Sam Klein, Charles Chaitkin, Morris Klein, and Sydney Klein, by which Zola and Florence Klein sold their interests in the partnership known as Standard Real Estate Company effective as of January 1, 1952.

8. Petitioners did not report the sale of said partnership interest in their income tax return for the taxable year 1952.

9. Subsequently, upon examination by respondent of petitioners' income tax return for the taxable year 1952, a deficiency was determined by including in the 1952 income of petitioners the sum of $4,882.18 received in that year as provided in the agreement referred to above and attached as Exhibit "1", on the basis that the sale in 1952 was reportable on the installment method of reporting income. This deficiency and installment method of reporting the income were consented to by petitioners.

10. Petitioners' basis in said partnership interest was $40,718.10, and petitioners realized a gross profit on the sale of said interest in the amount of $114,164.04, constituting a gross profit percentage of 73.71%.

11. Petitioners received $60,000.00 in 1957, $10,000.00 in 1958, $40,000.00 in 1959 and $10,000.00 in 1960, as provided in the agreement attached hereto as Exhibit "1".

12. The sole issue in controversy and the matter for determination, is whether the amounts received by petitioners as set forth in paragraph 11 above are taxable as long-term capital gain or as ordinary income.

\*       \*       \*       \*       \*       \*       \*

21. Petitioners hereby stipulate and agree to the assertion of the additions to tax under Section 6653(a) for the taxable years 1957, 1958, 1959 and 1960, and addition to tax under Section 6651(a) for the taxable year 1960, to be computed on the deficiencies and tax, respectively, determined in this case.

Exhibit 1 attached to the stipulation of facts, headed "Agreement," reads as follows:

WHEREAS, ZOLA KLEIN, SYDNEY KLEIN, BENJAMIN KLEIN, MORRIS KLEIN, CHARLES CHAITKIN and SAM KLEIN have been and are now partners in the partnership known as STANDARD REAL ESTATE COMPANY, evidenced by partnership agreement dated January 1, 1949, and

WHEREAS, the parties have agreed that ZOLA KLEIN, one of the partners, shall withdraw from the partnership and the remaining partners continue in said partnership, and

WHEREAS, the partnership is indebted to FLORENCE KLEIN, wife of ZOLA KLEIN, in the sum of Twenty-two thousand nine hundred ninety-one and 83/100 dollars ($22,991.83) by reason of her interest in certain properties, as more fully hereinafter set forth,

Now, THEREFORE, the parties hereto whose names are subscribed to the within instrument, intending to be legally bound hereby, agree as follows:

1. ZOLA KLEIN hereby withdraws from the partnership effective as of January 1, 1952, from which time the other named partners shall be the sole partners in said partnership.

2. ZOLA KLEIN hereby assigns, transfers and sets over to the partnership all of his right, title, interest, claim and demand in and to the assets of the partner-

ship wheresoever located and in whose name the same may now be titled and held, including, but not limited to, all real estate, mortgages, notes receivable, accounts receivable, agreements of sale, cash in bank and on hand and all other assets of whatsoever kind and nature of the partnership.

3. ZOLA KLEIN agrees that he will, if and when requested, execute and deliver to the partnership any and all deeds, assignment of mortgages and any other documents which may be necessary to transfer title from him to the partnership of any assets belonging to the partnership which after the execution hereof are discovered to be in his name.

4. FLORENCE KLEIN hereby assigns, transfers and sets over to the partnership any and all assets of whatsoever kind and nature belonging to the partnership which have been carried in her name and to convey by proper deed, if requested by the partnership, any real estate included in said assets still in the name of FLORENCE KLEIN and belonging to the partnership, and said FLORENCE KLEIN also agrees to join with her husband, ZOLA KLEIN, in the conveyance by him of any real estate belonging to the partnership which after the execution hereof are discovered to be in his name.

5. In consideration whereof, the partnership agrees to pay to ZOLA KLEIN the sum of One Hundred Thirty-One Thousand Eight Hundred Thirty-Nine and 31/100 ($131,839.31) Dollars, and to FLORENCE KLEIN the sum of Twenty-two thousand nine hundred ninety-one and 83/100 dollars. The amount due to FLORENCE KLEIN represents $754.21 still due her for her 20% in the property known as Dagus Mines and $22,237.62 for profits still due her in connection with her interest in the property known as the Brackenridge property.

6. Payment of the foregoing amounts due ZOLA KLEIN and FLORENCE KLEIN shall be made as follows. The partnership will execute and deliver the following notes: Note to ZOLA KLEIN dated January 2, 1952, in the sum of $4,882.18, payable on July 1, 1952, and five (5) notes each for $30,000.00 dated January 2, 1952, and payable to ZOLA KLEIN and FLORENCE KLEIN, one note payable on the first day of January 1957; one note payable on January 1, 1958; one note payable on January 1, 1959; one note payable on January 1, 1960; and one note payable on January 1, 1961; each note bearing interest at the rate of six (6%) per cent per annum, payable at the maturity of the note.

7. The partnership agrees to furnish to ZOLA KLEIN a certified financial statement of its business once every six (6) months during the time when any of the foregoing notes are unpaid.

8. ZOLA KLEIN hereby warrants that he has not incurred any obligations on behalf of the partnership which are not recorded on the books and records of the partnership, and he hereby agrees to save the partnership harmless from liability on any obligations not so recorded.

9. Except for the obligations hereinabove expressly set forth, ZOLA KLEIN and FLORENCE KLEIN hereby release, acquit and discharge the partnership and all members thereof, jointly and severally, from any and all claims, demands and actions whatsoever, and the partnership and all members thereof hereby release, acquit and discharge ZOLA KLEIN and FLORENCE KLEIN, jointly and severally, from any and all claims, demands and actions whatsoever arising out of, or in connection with, the partnership, or any other matter whatsoever.

Thus, it will be seen from the foregoing facts that by written agreement dated January 1, 1952, Zola withdrew from a partnership in which he had been a partner, and Zola and Florence sold and assigned to the partnership all their right, title, and interest in the assets of the partnership, which interests had been held for a period in excess of 6

months. In consideration of the foregoing, the partnership agreed to pay petitioners a sum aggregating $154,888.10, payments to be made by a series of six notes, the first of which was payable in 1952, and the remaining five payable annually on January 1, 1957, to January 1, 1961, inclusive.

The sole issue in controversy and the matter for our determination is whether the amounts received by petitioners in payment of said notes in each of the years 1957, 1958, 1959, and 1960 are taxable under the 1939 Code as long-term capital gain as petitioners contend, or are taxable under the 1954 Code as ordinary income as respondent contends.

Petitioners concede that if the 1954 Code is applicable to the notes which were collected in 1957, 1958, 1959, and 1960, then the gain in question is taxable as ordinary income.

Respondent concedes that if the gain realized by petitioners in the collection of the notes in 1957, 1958, 1959, and 1960 is governed by the 1939 Code, then the gain is taxable as capital gain and not as ordinary income. He contends, however, that the gain is taxable under the provisions of the 1954 Code and therefore should be taxed as ordinary income and not as capital gain.

It has been stipulated that petitioners received, pursuant to the agreement of January 1, 1952, the following amounts in the years indicated:

| Year: | Amount |
|---|---|
| 1957 | $60,000 |
| 1958 | 10,000 |
| 1959 | 40,000 |
| 1960 | 10,000 |

When the agreement between the petitioners, as the sellers, and the parties named in the agreement, as the purchasers, was negotiated six promissory notes were signed by the purchasers, payable to the sellers. If petitioners, who received the promissory notes, had returned as income the net profits from the sale in 1952, they would have been entitled to return them as capital gain under the 1939 Code—there is no dispute about that. But they did not do so.

We hold that petitioners elected to report the gain from their partnership interest in Standard Real Estate Co. on the installment method. Having elected to report on the installment method, they are bound by their election. The income in question, having been received in 1957, 1958, 1959, and 1960, years in which the 1954 Code was in effect, is governed, we think, by the provisions of the 1954 Code.

The leading and controlling case in this field, we think, is *Snell* v. *Commissioner*, 97 F. 2d 891 (C.A. 5, 1938), affirming a Memorandum Opinion of this Court. Among other things, the Fifth Circuit said:

As to the instalment sales made in 1923, the taxpayer might have elected to take his whole profit then and have had it taxed under the Revenue Act of 1921. He chose to defer realization of the profits on the deferred instalments. These thereby were left to fall under such provisions of the law as might be of force at their maturity. That the law might be changed, not only in the tax rate but in any other of its provisions, was a risk the taxpayer took in deferring the realization of his gains. The Board rightly applied to them the law as it stood when the gains became taxable.

It seems to us that *Snell* v. *Commissioner, supra*, is controlling here and we sustain the Commissioner. We do not understand that there is any difference between the parties as to the amount of income to be taxed in the respective years in which the notes were paid. The only difference between the parties, as we have already stated, is as to whether the income shall be taxed as capital gain under the 1939 Code, as petitioners contend, or whether it shall be taxed as ordinary income under the 1954 Code, as respondent has determined. That issue, as we have explained, is decided for the respondent.

Because of certain agreements and concessions between the parties,

*Decision will be entered under Rule 50.*