NICHOLAS PICCHIONE AND LILLIAN B. PICCHIONE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1271–69.     Filed July 15, 1970.

---

James R. McGowan and Lester H. Salter, for the petitioners.
Robert B. Dugan, for the respondent.

OPINION

FEATHERSTON, *Judge:* Respondent determined deficiencies in petitioners' Federal income tax as follows:

| Year | Deficiency |
| --- | --- |
| 1964 | $2,297.61 |
| 1965 | 4,803.16 |
| 1966 | 5,837.99 |

The only issue is whether amounts received by petitioner Nicholas Picchione from the Dome Enterprises Trust during 1964, 1965, and 1966 are taxable as ordinary income or capital gain.

Nicholas Picchione and Lillian B. Picchione, husband and wife, resided in Providence, R.I., at the time their petition was filed. Employing the cash method of accounting, they filed joint Federal income tax returns for 1964 through 1966 with the district director of internal revenue for the district of Rhode Island. Lillian B. Picchione (hereafter Lillian) is a petitioner in this proceeding solely because she filed a joint return with her husband. Nicholas Picchione will sometimes hereafter be referred to as petitioner.

Briefly summarized, the facts, all stipulated, show that petitioner, a certified public accountant, originated a record book entitled "Dome Simplified Weekly Bookkeeping Record" (hereafter Record Book). Before January 1, 1945, he transferred his entire interest therein to his wife, Lillian, and his son Everett Picchione (hereafter Everett). During 1945 Lillian and Everett applied for and obtained a copyright on the Record Book and, on January 2, 1946, sold their interests in the Record Book to a corporation owned, at that time, by Nicholas. The consideration for this sale was the right to receive monthly payments equal to 20 percent of the gross selling price of all books sold until October 1, 1973.

At the time of the sale neither Nicholas, nor Lillian, nor Everett, was engaged in the business of originating literary materials.

In 1952 Lillian and Everett transferred their rights in the future payments to the Dome Enterprises Trust (hereafter trust). When the trust had accumulated income in the amount of $50,000, the trustee was thereafter to pay the net income to petitioner for life. By January 1, 1964, the trust had made the specified accumulation and was paying its annual income to him.

**1492**

In its fiduciary income tax returns for 1964, 1965, and 1966, the trust reported the receipts from the sale of the copyright as long-term capital gain, claiming a deduction for the sums paid to petitioner. In their joint income tax returns for those years, petitioners reported the receipts from the trust as long-term capital gain. Respondent determined that the receipts are not capital gain but are ordinary income.

Petitioner contends that the applicable provisions of the 1939 Code, as they stood at the time of the sale of the copyright in 1946, characterize his trust receipts in 1964, 1965, and 1966 as long-term capital gain.[1] Respondent maintains that the definition of "capital asset" in section 1221 of the 1954 Code, derived from section 117(a)(1) of the 1939 Code as amended by section 210 of the Revenue Act of 1950, 64 Stat. 932-933, characterizes petitioner's trust receipts as ordinary income. These contentions of the parties pose the issue to be decided.

Prior to 1950, the definition of a capital asset made it possible for a creative individual to sell his literary or artistic output and pay tax on the profits at capital gain rates as long as he could show his work was not property held primarily for sale in the ordinary course of his business. *Stern* v. *United States*, 164 F.Supp. 847 (E.D. La. 1958), affirmed per curiam 262 F.2d 957 (C.A. 5, 1959). Congress was dissatisfied with this rule and changed it by section 210 of the Revenue Act of 1950. H. Rept. No. 2319, 81st Cong., 2d Sess., 1950-2 C.B. 445-447; S. Rept. No. 2375, 81st Cong., 2d Sess., 1950-2 C.B. 543-544; H. Conf. Rept. No. 3124, 81st Cong., 2d Sess., 1950-2 C.B. 585. The change was accomplished by an amendment modifying the definition of "capital assets" to exclude, under stated conditions, a copyright; or a literary, musical, or artistic composition; or similar property.[2] As to the effective date of the change, section 210(c) states: "The amendments made by this section shall be applicable with respect to taxable years beginning after the date of the enactment of this Act."

---

[1] The character of the income to petitioner is the same as it is to the trust. Secs. 652(b), 662(b), I.R.C. 1954.

[2] Revenue Act of 1950, 64 Stat. 932-933, sec. 210(a), provides:

(a) DEFINITION OF CAPITAL ASSETS.—Section 117(a)(1) [of the 1939 Code] (relating to the definition of capital assets) is hereby amended to read as follows:

"(1) CAPITAL ASSETS.—The term 'capital assets' means property held by the taxpayer * * *, but does not include—

> \*     \*     \*     \*     \*     \*     \*

"(C) a copyright; a literary, musical, or artistic composition; or similar property; held by—

"(i) a taxpayer whose personal efforts created such property, or

"(ii) a taxpayer in whose hands the basis of such property is determined, for the purpose of determining gain from a sale or exchange, in whole or in part by reference to the basis of such property in the hands of the person whose personal efforts created such property; or

This amendment was carried forward as part of sec. 1221, I.R.C. 1954.

Lillian's and Everett's basis in the Record Book is determined by what it was in the hands of petitioner, its creator, and petitioner does not contend otherwise.

Emphasizing that the 1950 amendments related only to the definition of the term "capital assets," petitioner points out that even the revised definition refers to a copyright "held" by the taxpayer. Citing *McFeely* v. *Commissioner*, 296 U.S. 102, 107, 108 (1935), he argues that "held" means "owned," and that he did not own the copyright on the effective date of the amendment and, indeed, has not owned it since January 2, 1946, when it was sold.

Although petitioner's argument is skillfully presented, we think it is without merit. In our view, his income tax on his copyright income for 1964, 1965, and 1966 is to be determined by reference to the definition of the term "capital asset" in section 1221, I.R.C. 1954, in the form in effect in those years. This is the clear import of the following explanation in S. Rept. No. 2375, 81st Cong., 2d Sess., 1950-2 C.B. 544, accompanying the Revenue Act of 1950:

In the case of the sale, prior to the effective date of the amendment, of an artistic work by a creator who has elected the installment basis under section 44, the tax treatment of installment payments received after such effective date will be governed by the rule of *Snell* v. *Commissioner* (97 Fed. (2d) 891).

*Snell* v. *Commissioner*, 97 F. 2d 891 (C.A. 5, 1938), referred to in the report, holds that in the case of installment sales the law in effect at the time payment is made, rather than the time of the sale, determines the character of the income. See also *Zola Klein*, 42 T.C. 1000 (1964); *Harry B. Golden*, 47 B.T.A. 94 (1942). While petitioners reported their income under the deferred payment rather than the installment method of accounting, such a fine distinction does not alter the rule. The statement in the committee reports, we think, was merely illustrative and was not intended to restrict the applicability of the principle. We hold, therefore, that petitioner is not entitled to capital gain treatment of his 1964, 1965, and 1966 receipts from the copyright.

We are aware of the Supreme Court's teaching that a court should give amendments to the Code "prospective application only, unless otherwise specifically provided." *Reo Motors* v. *Commissioner*, 338 U.S. 442, 450 (1950); cf. *Southeast Equipment Corporation*, 33 T.C. 702 (1960), affd. 289 F. 2d 493 (C.A. 6, 1961). But that principle is not involved here; it refers to amendments which would change the tax results of years prior to the new enactment. Here, our interpretation of the 1950 amendments would not affect the tax result for any year prior to the enactment. It would merely apply the revised definition of capital assets in the computation of taxes for years subsequent to the enactment, regardless of when the transaction producing the

gain occurred. This holding, in our view, is required by the language and legislative history of the 1950 amendments.

We conclude that for 1964, 1965, and 1966 petitioner's receipts from the trust are ordinary income rather than capital gain.

*Decision will be entered for the respondent.*