**Nicholas PICCHIONE et al., Petitioners, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee.**

**No. 7771.**

United States Court of Appeals,
First Circuit.

March 12, 1971.

James R. McGowan, Providence, R. I., with whom Lester H. Salter, Harold C.

Arcaro, Jr., Alan L. Swartz, and Salter, McGowan, Arcaro & Swartz, Providence, R. I., were on brief, for petitioners, appellants.

Issie L. Jenkins, Atty., Tax Div., Dept. of Justice, with whom Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, and Grant W. Wiprud, Attys., Tax Div., Dept. of Justice, were on brief, for respondent, appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an appeal by a husband and wife from a decision of the Tax Court, 54 T.C. 1490. For simplicity we eliminate some of the background facts, and omit further mention of the wife.

Sometime before 1945 taxpayer devised a new bookkeeping record called the Dome Simplified Weekly Record Book. In 1946 the book was copyrighted and sold to a corporation owned by him in return for monthly payments equal to 20% of the gross selling price of all books sold until October 1, 1973. In 1952 the right to future payments was transferred to a trust. The trustee was directed to accumulate income for a time and then pay the net income of the trust to taxpayer for life. The first payment was made in 1964. Taxpayer is on a cash basis.

In its fiduciary returns for 1964, 1965, and 1966, the trust reported its receipts from the sale of the copyright as long term capital gains, and claimed a deduction for the sums paid to taxpayer. Taxpayer took the same approach. The Commissioner concluded that the payments were, instead, ordinary income, and determined deficiencies for the

three years. The Tax Court upheld the Commissioner, and this appeal followed.

In 1946, when the interest in the record book was sold, the revenue code contained no special provisions dealing with copyrights in its definition of capital assets. Copyrights such as the one involved here were considered capital assets so long as they were not held for sale to customers in the ordinary course of trade or business. As a result taxpayers who, like the one at bar, were not engaged in the business of producing copyrighted materials, were entitled to have the profits from the sale of their creations taxed at long term capital gains rates, provided they had held the creations for the required period of time before selling. This favorable treatment was brought to an end by the Revenue Act of 1950, which amended the definition of capital assets to exclude copyrights under the general circumstances presented in this case. The new definition was carried forward, and now appears in section 1221 of the Internal Revenue Code of 1954.[1]

The 1950 act contained the following provision concerning the effective date of the amendment.

"The amendments made by this section shall be applicable with respect to taxable years beginning after the date of the enactment of this Act." Revenue Act of 1950, § 210(c), 64 Stat. 933.

Similar language governs the effective date of section 1221 of the 1954 code. Int. Rev. Code of 1954, § 7851(a). The Commissioner takes the position, which the Tax Court affirmed, that under these provisions the new definition is to be used in determining the character of

---

1. Section 1221 provides in part as follows:
"For purposes of this subtitle, the term 'capital asset' means property held by the taxpayer * * *, but does not include—
* * * * *
"(3) a copyright, a literary, musical, or artistic composition, or similar property, held by—
"(A) a taxpayer whose personal efforts created such property, or

"(B) a taxpayer in whose hands the basis of such property is determined, for the purpose of determining gain from a sale or exchange, in whole or in part by reference to the basis of such property in the hands of the person whose personal efforts created such property * * *."

all payments received in taxable years beginning after the enactment of the amendment. Taxpayer, on the other hand, contends that the amended definition applies only to copyrights transferred after the effective date. He points to the word "held," characterizing it as the operative word of the definition, and argues that it means owned and that therefore the amendment does not apply to his copyright because it was not owned by him in a taxable year beginning after the amendment's enactment.

■ Although the language of the effective date provision will probably bear both meanings the parties advance, the Commissioner's interpretation seems to us to be the proper one. Apart from the fact that literal meaning need not always be given to words in a statute, and congressional concern may be directed to substance rather than niceties of title, section 117(a) of the 1939 code, which contained the definition of capital assets, was not an operative section. It merely supplied definitions to be used in applying section 117(c), which authorized an alternative tax for that part of a taxpayer's income that was net long term capital gain in any taxable year. The same relationship now exists between sections 1221 and 1201 of the 1954 code. A determination must be made in each taxable year as to the extent to which income may be taxed at the alternative rate. We are satisfied that Congress' provision for application of the new definition to taxable years beginning after enactment of the 1950 amendment is best understood as meaning that it is to be applied in making that determination for taxable years beginning after that date regardless of the year in which the transfer giving rise to the income occurred.

Any ambiguity that may be thought to exist is resolved by examination of the legislative history of the 1950 act. The report of the Senate Finance Committee contains the following explanation of the effect of the amendment on installment sales made prior to its effective date.

> "In the case of the sale, prior to the effective date of the amendment, of an artistic work by a creator who has elected the installment basis under section 44, the tax treatment of installment payments received after such effective date will be governed by the rule of Snell v. Commissioner (97 Fed.(2d) 891)." S.Rep. No. 2375, 81st Cong. 2d Sess., 1950–2 C.B. 483, 544.

The same language is contained in a House report. H.R.Rep. No. 2319, 81st Cong., 2d Sess., 1950–2 C.B. 380, 447. Snell v. Commissioner of Internal Revenue, 5 Cir., 1938, 97 F.2d 891, holds that in the case of installment sales the law in effect at the time the payment is received, not at the time of the sale, determines the character of the income. The general intention of Congress with respect to receipts from the sale of copyrights sold prior to the passage of the amendment thus seems apparent. Stern v. United States, E.D.La., 1958, 164 F. Supp. 847, 851–53, aff'd per curiam, 262 F.2d 597, cert. denied 359 U.S. 969, 79 S.Ct. 880, 3 L.Ed.2d 836. Taxpayer's attempts to distinguish Snell on the ground that it was wrongly decided, or because of incidental differences with the present case are beside the mark. We are not considering whether the Snell decision governs the case at bar, but are looking to it only to verify our conclusion as to Congress' intent.[2]

2. The court's language in *Snell* dealing with this matter is short and in our opinion abundantly clear. We quote it in its entirety.

> "As to the instalment sales made in 1923, the taxpayer might have elected to take his whole profit then and have had it taxed under the Revenue Act of 1921. He chose to defer realization of the profits on the deferred instalments. These thereby were left to fall under such provisions of the law as might be of force at their maturity. That the law might be changed, not only in the tax rate but in any other of its provisions, was a risk the taxpayer took

■ We remark, *in passing, that we* are not persuaded of the relevancy of taxpayer's references to certain cases where the Court said that retrospective application of tax laws should be made only when there is a clear congressional mandate. *See, e. g.,* Claridge Apartments Co. v. Commissioner of Internal Revenue, 1944, 323 U.S. 141, 164, 65 S. Ct. 172, 89 L.Ed. 139; Brewster v. Gage, 1930, 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed. 457. Taxpayer's cases involve the application of statutes to income received in years prior to their enactment. Here we are considering only the taxation of income received subsequent to the adoption of the statute, a far less drastic imposition. By the same token we are not persuaded that the Tax Court's interpretation of the statute makes it unconstitutional. Retrospective taxation, even to the extent of applying a statute to impose new tax burdens on taxable events that occurred prior to the enactment of the statute, is not necessarily unconstitutional. United States v. Hudson, 1937, 299 U.S. 498, 57 S.Ct. 309, 81 L.Ed. 370; Brushaber v. Union Pac. R.R., 1916, 240 U.S. 1, 36 S. Ct. 236, 60 L.Ed. 493. To be unconstitutional, the result must be so harsh and oppressive *as to amount to a denial of* due process. Welch v. Henry, 1938, 305 U.S. 134, 147, 59 S.Ct. 121, 83 L.Ed. 87. In *Welch* the Court upheld the application of a 1935 change in state income tax rates to income earned and reported in 1933.

■ No constitutional question is even raised by changing the definition of capital assets, and hence the tax rate, applicable to subsequent receipts. Taxpayer has no constitutional right to have all income flowing from his 1946 sale of the copyright taxed under the revenue laws in effect at that time regardless of when the income is received. Tax liability is not a contract. Welch v. Henry, ante, at 146, 59 S.Ct. 1211. Nor has the government ever represented that future years would not bring changes in the tax laws. Such changes are as inevitable as taxation itself. When a taxpayer chooses to spread the realization of income from a transaction over a number of years, as taxpayer did here, the government does not violate due process by taxing that income under the revenue laws in effect in the year in which it is received and reported.

Affirmed.

in deferring the realization of his gains. The Board rightly applied to them the law as it stood when the gains became taxable." 97 F.2d at 893.