RICHARD H. TUNSTEAD and MABEL H. TUNSTEAD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tunstead v. Commissioner
Docket No. 6079-70.
United States Tax Court
T.C. Memo 1973-120; 1973 Tax Ct. Memo LEXIS 167; 32 T.C.M. (CCH) 523; T.C.M. (RIA) 73120; May 31, 1973, Filed Richard H. Tunstead, pro se. Kimball K. Ross, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1967 in the amount of $3,365.49. Because of concessions, the only issues remaining for our decision are (1) whether a loss which petitioners sustained in 1967 on a mortgage foreclosure qualifies as a business bad debt deduction, and (2) whether, 2 under the facts of this case, foreclosure expenses are properly includable in determining the amount of that loss. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife who, at the time of the filing of the petition herein, resided in Mt. Kisco, New York. They filed their joint *168 Federal income tax return for the year 1967 with the district director of internal revenue, New York, New York. From 1961 through 1967 petitioners made several investments in real estate. During this period petitioner Richard H. Tunstead (Richard) practiced law, while Mabel H. Tunstead (Mabel) was a housewife. Petitioners maintained neither a separate office nor a telephone for the conduct of their real estate transactions. All the moneys used by petitioners for their real estate transactions came from Richard's law practice. The loss at issue arose from petitioners' investment in a second mortgage on property located on Belmont Avenue, New York City (the Belmont property). [1] On January 4, 1963, 3 petitioners, together with nine other individuals, purchased a second mortgage yielding six-percent interest per annum on this property. The principal owed on the mortgage at the time of purchase was $78,163.59, but petitioners and their co-owners purchased the mortgage at a discount. Petitioners paid $11,700 for a 20-percent interest *169 in the Belmont mortgage. They placed this interest in Mabel's name rather than in their joint names for the purpose of minimizing future estate and inheritance taxes. Petitioners' purpose in investing in the Belmont property was to earn interest income on the mortgage. Richard's activities relating to the Belmont property consisted of "discovering it as a prospect for investment," investigating it, and handling the closing. Principal and interest were paid on the Belmont second mortgage until 1967 when it went into default and was foreclosed. At the foreclosure sale no one but the owners of the second mortgage bid for the property and their bid of $1,000 was successful. On December 29, 1967, the fee title to the Belmont property, subject to the existing first mortgage, was conveyed to the owners of the second mortgage. Petitioners and their co-owners incurred foreclosure expenses in the total 4 amount of $1,447.98. These expenses were paid in 1968 by the manager of the Belmont property out of its operating income, but no evidence was submitted as to how these expenses were treated by the manager or accounted for. From 1961 until 1967 petitioners made four other investments *170 in real estate. In 1961 they acquired (at a discount) in Mabel's name, a second mortgage on property located on Sullivan Street. This mortgage was never in default. The purchase and sale prices are not shown in the record, but it was sold at a profit by petitioners on December 8, 1965. On April 7, 1961, petitioners, in Richard's name only, purchased a brownstone at East 38th Street along with three other individuals. Richard and his partners purchased equal shares, each paying about $11,200 and buying subject to existing mortgages. They then operated the East 38th Street property, substantially renovated it and attempted unsuccessfully to obtain commercial zoning. This property was sold on December 16, 1965, for an undisclosed amount and the partners took back a second mortgage which was sold by Richard and his partners for an undisclosed amount on June 28, 1968. On January 9, 1964, petitioners, along with nine other individuals, purchased a $35,000 second mortgage on property on East 144th Street for an undisclosed amount. Petitioners' 5 25-percent interest in this mortgage was taken, and is still held, solely in Richard's name. On February 15, 1965, petitioners, *171 in Mabel's name only, acquired a 20-percent interest for an undisclosed amount in an apartment property on Zerega Avenue in the Bronx. Petitioners' interest was subject to a mortgage which was foreclosed in 1972 and petitioners' interest was "abandoned," but the extent of their loss is not disclosed by the record. During the taxable years 1966 and 1967 Richard reported income from his law practice in the respective amounts of $32,377.81 and $31,451.35. Petitioners reported interest income from their real estate in the amount of $1,256.87 for 1966, and $986.37 for 1967. Richard paid self-employment taxes on the income earned from his law practice, but neither petitioner reported any of their real estate income as self-employment income. On their 1967 joint Federal income tax return petitioners claimed a business bad debt deduction in the amount of $11,251.49 resulting from the loss (including their pro rata share of foreclosure expenses in the amount of $289.59) sustained on the Belmont property. It is now stipulated that this loss, exclusive of expenses, was $10,761.90. 6 Respondent determined that petitioners' claimed loss was in the amount of $10,761.90, and that *172 it was a nonbusiness bad debt subject to the limitations on capital losses. [2]
OPINION The first issue for our decision is whether the loss sustained on the foreclosure of the Belmont mortgage is a loss from a business or a nonbusiness bad debt. In order for the petitioners to receive their claimed business bad debt deduction, they must establish that they were in the real estate business. Susan P. Emery, 17 T.C. 308 (1951). The determination of whether a taxpayer is in the realty business is essentially one of fact. Cohn v. Commissioner, 226 F.2d 22, 24 (C.A. 9, 1955). It is our opinion that petitioners have failed to prove that they were engaged in the realty business. We therefore hold that petitioners' loss is a nonbusiness bad debt. Carrying on a trade or business "implies an occupational undertaking to which one habitually devotes time, attention or effort with substantial regularity." Fahs v. Crawford, 7 161 F.2d 315, 317 (C.A. 5, 1947). "The word [business], not withstanding disguise in spelling and *173 pronunciation means busyness, that the activity is an occupation." Snell v. Commissioner, 97 F.2d 891, 892 (C.A. 5, 1938). The time and effort which petitioners devoted to their real estate was not sufficiently engrossing to meet this standard. The record does not show that Mabel engaged in activities from which one might conclude that she was engaged in any business. During the entire period under consideration Richard was engaged in the practice of law. While he did devote some time to the properties at East 38th Street and at Zerega Avenue, the record does not disclose the extent of these efforts. The record does disclose, however, that he spent little time on the other properties. The infrequency of petitioners' real estate transactions and the extent of their interests in the properties also vitiate their assertion that they were in the realty business. [3] From 1961 through 1967 petitioners made only five investments and two sales in real estate. They had a limited interest in each property. Such limited realty interests and infrequent transactions are insufficient to be considered a business. *174 Finally, 8 we note that petitioners did not report any of the interest income from their real estate for the taxable year 1966 or 1967 as self-employment income from a trade or business as required by section 1402. This is an indication that petitioners did not consider themselves to be in the realty business. We have found that petitioners' activities considered jointly did not constitute a trade or business and therefore do not reach respondent's argument that, since the Belmont mortgage was held in Mabel's name only, her activities alone should be considered in determining whether a trade or business existed. The second issue for our decision is whether foreclosure expenses incurred by petitioners on the Belmont mortgage should be included as part of the nonbusiness bad debt deductible by petitioners in 1967. Subsequent to this foreclosure a manager operated the Belmont property on behalf of petitioners and their co-owners. Richard testified that the manager paid foreclosure expenses in 1968 out of operating income. No evidence was submitted to indicate how these expenses were treated by the manager. 9 Petitioners have failed to sustain their burden of proof *175 and must be denied the claimed deduction on this issue. Decision will be entered under Rule 50. Footnotes
1. All properties referred to in the instant case are in New York City and will hereinafter only be referred to by the street address. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise specified. ↩
3. See and compare Joseph M. Philbin, 26 T.C. 1159↩ (1956).