L. O. WARD and Myra Ward, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CIV-79-621-W.

United States District Court, W. D. Oklahoma.

June 30, 1981.

Stephen Jones, Jones & Gungoll, Enid, Okl., for plaintiffs.

Larry D. Patton, U. S. Atty., Oklahoma City, Okl., Rick K. Disney, Atty., Dept. of Justice, Tax Div., Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

LEE R. WEST, District Judge.

### INTRODUCTION

This is a suit for an income tax refund by L. O. and Myra Ward. Plaintiffs allege that they are entitled to a refund of $112,-988.00 for certain taxes paid in 1976 because the minimum tax on tax preferences, as amended by the Tax Reform Act of 1976 [26 U.S.C. §§ 56, 57(a)(11)] is unconstitutionally retroactive, discriminatory, and confiscatory in the imposition of a tax on intangible drilling costs (IDC's). Alternatively, Plaintiffs claim that if the tax is constitutional, it is not an income tax but an excise tax and as such is deductible as an ordinary business expense under 26 U.S.C. § 162 or 26 U.S.C. § 212.

This case is submitted to the Court on motions for summary judgment by both parties. The parties agree that there are no genuine issues of material fact and that the Court should determine as a matter of law: (1) whether the minimum tax on intangible drilling costs is unconstitutionally retroactive, (2) whether it is confiscatory as applied to these plaintiffs, (3) whether it is discriminatory because applicable only to individuals and not to corporations, and (4) whether it is an excise tax and therefore deductible as an ordinary business expense. The Court has considered the pleadings, documents, affidavits, briefs, and supplemental memoranda and has heard oral arguments of counsel on the motions. Based thereon, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. The Court has jurisdiction of the cause of action pursuant to 28 U.S.C. § 1346(a)(1).

2. Plaintiffs L. O. and Myra Ward, independent oil and gas producers, have brought this action for refund of taxes of $112,988.44, having properly filed a Claim for Refund for 1976 and having exhausted their administrative remedies.

3. Prior to 1976, the owner of an operating interest in an oil or gas well was allowed the option (under Sec. 263(c)) to deduct as a current expense all the intangible drilling costs connected with that well. Intangible drilling costs include amounts paid for labor, fuel, repairs, hauling, and supplies which are used in drilling oil or gas wells, clearing of ground in preparation for drilling, and the intangible costs of constructing derricks, tanks, pipelines, and other structures and equipment necessary for the drilling of the wells and the preparation of the wells for production. If a taxpayer did not make the one-time election to deduct these costs currently, they would, in the case of a successful well, be added to the taxpayer's basis and recovered through depletion and depreciation; in the case of a dry hole, the intangible drilling costs would be deducted at the time the dry hole is completed.

4. In 1964, Plaintiffs exercised the one-time option to elect to take their IDC's as a deduction and each year thereafter they deducted their intangible drilling costs rather than capitalizing them.

5. Congress, as part of the Tax Reform Act of 1976, raised the minimum tax on tax preference items to 15% [26 U.S.C. § 56(a)] and added IDC's to the list of minimum tax preference items. [26 U.S.C. § 57(a)(11)]. The explanation of the Joint Committee of Congress with respect to the 1976 Amendment states:

"The minimum tax was enacted in the Tax Reform Act of 1969 in order to make sure that at least some minimum tax was paid on tax preference items, especially in the case of high-income persons who were not paying their fair share of taxes. However, the previous minimum tax did not adequately accomplish these goals, so the Act contains a substantial revision of the minimum tax of individuals to achieve this objective.

[General Explanation of the Tax Reform Act of 1976, 94th Cong., 2nd Sess., p. 105 (1976–3 Cum.Bull. (Vol. 2, 117)).]

During consideration of the bill, different versions of the bill were favored by the House and Senate. Under the version favored by the Senate, only IDC's in excess of the amount deductible if capitalized and in excess of net income from oil production would have been subject to the minimum tax. The provision which Congress finally passed, § 57(a)(11) of the Internal Revenue Code, provides:

(11) Intangible Drilling Costs—

The excess of the intangible drilling costs described in section 263(c) paid or incurred in connection with oil and gas wells (other than costs incurred in drilling a non-productive well) allowable under this chapter for the taxable year over the amount which would have been allowable for the taxable year if such costs had been capitalized and straight line recovery of intangibles (as defined in subsection (d)) had been used with respect to such costs.

6. Plaintiff L. O. Ward made at least four trips to Washington, D. C., and became actively involved in the lobbying effort by the oil and gas industry concerning the Tax Reform Act of 1976.

7. The tax was signed into law October 4, 1976, and was retroactive to January 1, 1976.

8. Congress, as part of the Tax Reduction and Simplification Act of 1977, amended the law to eliminate the minimum tax except to the extent net income exceeded the amount of IDC's for the taxable year. 26 U.S.C. § 57(a)(11)(A).

9. A proposal to make the Amendment apply retroactively to all tax years beginning after December 31, 1975, was considered and defeated in the Senate.

10. On April 15, 1977, Plaintiffs filed their Joint Individual Federal Income Tax Return for the calendar year 1976 with the Internal Revenue Service Center, Austin, Texas, which serves Oklahoma, paying the sum of $214,875.77 in income taxes reported due on said return.

11. On March 1, 1978, Plaintiffs filed with the Internal Revenue Service Center, Austin, Texas, a Form 1040X Amended U. S. Individual Income Tax Return for the calendar year 1976, seeking a refund for

overpayment of taxes in the amount of $119,879.44.

12. On August 1, 1978, the Internal Revenue Service mailed to Plaintiffs an examination report adjusting Plaintiffs' tax liability downward in the amount of $6,870.55 for allowance of a portion of taxpayers' claim for refund on their 1040X. The refund was for reasons unrelated to the issues in this case.

13. On October 12, 1978, the Internal Revenue Service, by certified mail, mailed to Plaintiffs a notice of allowance of part of their claim for adjustment in the amount of $6,870.55 and a disallowance of the balance of the total claim for adjustment of $119,-879.44.

14. On March 19, 1979, Plaintiffs filed a Form 843 Claim for Refund with the Internal Revenue Service Center, Austin, Texas, for the calendar year 1976, in the amount of $112,988.44. Said Claim for Refund was denied.

15. Plaintiffs' income from oil and gas production was approximately $2.4 million. Plaintiffs' regular income tax was $33,-980.96 plus $4,815.75 additional taxes. As a result of the minimum tax, Plaintiffs were required to pay a minimum tax of 15% on all tax preference items over the greater of $10,000.00 or the taxpayers' regular tax deductions. Plaintiffs owed a minimum tax as a result of tax preference items other than IDC's for 1976 of $56,220.07 which is not contested. Plaintiffs' total deductions for IDC's were over $1 million. Plaintiffs contest the minimum tax on $753,256.00 which is the amount by which the IDC deduction exceeded the amount which could have been deducted had the IDC's been amortized and capitalized over a ten year period. Plaintiffs' minimum tax which results from the inclusion of IDC's as a minimum tax preference item is $112,988.00, the subject of this suit.

## MEMORANDUM OPINION AND CONCLUSIONS OF LAW

### Constitutionality of the Retroactive Application of the Tax

It has been settled for over a century that a law of Congress imposing a tax may be retroactive in its operation. *Stockdale v. Insurance Companies*, 20 Wall. 323, 331, 22 L.Ed. 348; *Railroad Co. v. Rose*, 95 U.S. 78, 80 (1877); *Railroad Co. v. United States*, 101 U.S. 543, 549, 25 L.Ed. 1068 (1880); *Flint v. Stone Tracy Co.*, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911); *Billings v. United States*, 232 U.S. 261, 282, 34 S.Ct. 421, 424, 58 L.Ed. 596 (1914); *Brushaber v. Union Pacific R. R. Co.*, 240 U.S. 1, 20, 36 S.Ct. 236, 242, 60 L.Ed. 493 (1916); *Lynch v. Hornby*, 247 U.S. 339, 343, 38 S.Ct. 543, 544, 62 L.Ed. 1149 (1918); *Hecht v. Mally*, 265 U.S. 144, 164, 44 S.Ct. 462, 469, 68 L.Ed. 949 (1924).

Almost all the income tax acts adopted by Congress have been retroactive in that they applied to income earned, prior to the passage of the Act, during the calendar year. Many of these acts were more aggressively retroactive than the tax in question. Some of the acts have taxed income earned in an earlier year, and in 1863, an additional tax was imposed after the taxes for the year had been paid. In *Welch v. Henry*, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938), the Supreme Court upheld the constitutionality of an emergency tax that was passed by the Wisconsin Legislature in 1935 and that was imposed on dividends received from Wisconsin corporations in 1933. In *First National Bank in Dallas v. United States*, 420 F.2d 725 (1970), the Court of Claims upheld an interest equalization tax of 15% retroactively imposed on the value of foreign securities purchased by U. S. persons from foreign persons. In *Picchione v. Commissioner*, 440 F.2d 170 (1971), *aff'g*, 54 T.C. 1490 (1970), *cert. den.*, 404 U.S. 828, 92 S.Ct. 66, 30 L.Ed.2d 57 (1971), the First Circuit held that after 1950, ordinary income tax rates applied to deferred payments received from the sale in 1948 of a copyright even though before the Revenue Act of 1950, such amounts were treated as capital gain.

The presumption is in favor of the validity of an act of Congress until the contrary is shown beyond a rational doubt because one branch of government cannot

encroach on the domain of another without danger. *Sinking Fund Cases*, 99 U.S. 700, 718, 25 L.Ed. 496 (1879).

■ Plaintiffs argue that the tax in question was so unfair to oil producers that the tax was amended in 1977 to eliminate the minimum tax except to the extent net income exceeded the amount of IDC's for the taxable year and that the Court should strike it down for this reason. The same argument was considered and rejected by the Court in *Buttke v. Commissioner*, 72 T.C. 677 (1978), aff'd, 625 F.2d 202 (8th Cir. 1980), and in *Witte v. Commissioner*, 40 T.C.M. 1259 (1980), with respect to the fact that in 1978 Congress changed the minimum tax by eliminating capital gains from the tax. The Court stated in *Buttke, supra*: "Although Congress may have reconsidered its position on the issue, it simply did not make these changes effective for 1976." 72 T.C. at 680, 681. The same can be said in the present case. Congress considered making the amendment with respect to intangible drilling costs retroactive, but chose not to do so. The Court cannot do what Congress chose not to do, unless the tax is unconstitutional.

A number of Courts have considered the constitutionality of the retroactive application of the minimum tax. The only Court which found in favor of the position taken by these plaintiffs has been reversed by the United States Supreme Court. *United States v. Darusmont*, 80 U.S.T.C. ¶ 9671 (May 30, 1980); rev'd, 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513, 81 U.S.T.C. ¶ 9137 (1981). Cases upholding the retroactive application of the minimum tax are *Buttke v. Commissioner*, 72 T.C. 677 (1979), aff'd per curiam, 625 F.2d 202 (8th Cir. 1980), cert. den., (1981, U.S.), —— U.S. ——, 101 S.Ct. 1517, 67 L.Ed.2d 819; *Lubus v. United States*, 78–1 U.S.T.C. ¶ 9242 (2nd Cir. 1978); *Parker v. Commissioner*, 74 T.C. 29 (1980); *Estate of Kearns v. Commissioner*, 73 T.C. 1223 (1980); *Kilbourne v. Commissioner*, 41 C.C.H. T.C.M. 578 (1980); *Schopp v. Commissioner*, 40 T.C.M. 275 (1980); *Witte v. Commissioner*, 40 T.C.M. 1259 (1980); *Estate of Lewis v. Commissioner*, 40 T.C.M. 78 (1980) (appeal pending 5th Cir.); *Wyly v. U.S.A.*, No. CA–3–78–1118–D and CA–3–78–1119–D (N.D.Tx., July 22, 1980); *Becker v. U.S.A.*, 597 F.2d 281 (5th Cir. 1979); *Graff v. Commissioner*, 74 T.C. No. 58 (1980); *Appendrodt v. United States*, 490 F.Supp. 490 (1980).

■ The Court in *Appendrodt v. United States, supra*, points out several reasons for judicial deference to the retroactive application of income tax statutes. Taxes are neither penalties nor liabilities assumed by contract, but are a means of apportioning the cost of government. Congress is better able to allocate the burden to those it judges should bear it by applying a tax to the beginning of a calendar year. *Appendrodt v. United States, supra*, at 492.

The Court is convinced that the tax in question is not *per se* unconstitutional. Having made this determination, we must nevertheless conduct the standard judicial inquiry to determine whether the tax in question is so harsh and oppressive as to be invalid.

The Tenth Circuit considered whether the retroactive application of the 1976 amendments to the IRC § 56 "minimum tax" violated petitioners' due process rights under the Fifth Amendment to the United States Constitution in *Westwick v. Commissioner*, 636 F.2d 291 (10th Cir. 1980). Petitioners in that case made many of the same arguments Plaintiffs ask us to consider. The Tenth Circuit directs us to language of the Supreme Court in *Welch v. Henry*, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938):

> "In each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation."

They also quote with approval the words of Judge Learned Hand from *Cohan v. Commissioner*, 39 F.2d 540, 545 (2nd Cir. 1930):

> "Nobody has a vested right in the rate of taxation, which may be retroactively changed at the will of Congress at least for periods of less than twelve months;

Congress has done so from the outset.... [O]ne may indeed complain that, could he have foreseen the increase, he would have kept the transaction unliquidated, but it will not avail him; he must be prepared for such possibilities [*i. e.*, the retroactive increase in tax rates], the system being already in operation. His is a different case from that of one who, when he takes action, has no reason to suppose that any transactions of the sort will be taxed at all."

Plaintiffs in this case argue that the holdings in *Westwick v. Commissioner, supra*, and *United States v. Darusmont, supra*, are favorable to their position. Plaintiffs argue that the tax in question is an entirely new tax on transactions which Plaintiffs had no reason to expect would be taxed at all. Plaintiffs make the same arguments which were made and rejected by the Tenth Circuit in *Westwick* and by the Supreme Court in *Darusmont*, that this tax is more akin to a gift or estate tax than an income tax and that *Blodgett v. Holden*, 275 U.S. 142 (1927), modified 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206 (1928) and *Untermyer v. Anderson*, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645 (1928), are controlling. Both Courts rejected this argument, as we must here, because the minimum tax on intangible drilling costs is an income tax.

Plaintiffs have directed the Court's attention to several articles which theorize that the Courts are wrong in finding the tax in question to be an income tax. They argue that a more thorough analysis of the tax shows it to be a direct tax or an excise tax.[1] Although the commentators' presentation is interesting from a theoretical viewpoint, the Court cannot ignore the plain language and intent of Congress and the holdings of other courts.

The clear language and intent of Congress was noted in *Lubus v. United States*, 781 U.S.T.C. ¶ 9242 (Jan. 5, 1978):

"By its clear wording, Section 56 of the Internal Revenue Code imposes a tax '[in] addition to the other taxes' imposed under the income tax provisions. The Legislative History of the provision supports this language for congress's intention was not to give tax relief, but rather to impose an additional tax on high income individuals with large amounts of nonwage income."

The Internal Revenue Service has consistently treated the tax as an income tax. Rev.Rul. 77–396, 1977–2 C.B. 86. Additionally, all of the courts which have considered this question have found the minimum tax to be an income tax. *See Graff v. Commissioner, supra*, and the cases cited therein.[2] It is well settled that the concept of "income" for tax purposes is extremely broad. *Eisner v. Macomber*, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920). The tax laws have been liberally interpreted without restrictive labels or limitations as to the source of taxable receipts. The Court finds that the tax in question is a tax on economic benefit as defined in *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955) and accordingly, is an income tax.

Plaintiffs in this case make essentially the same arguments made in *Darusmont*. They contend: (1) that they had no notice of the minimum tax when the events which triggered the tax took place, making the retroactive imposition of the tax arbitrary, harsh, and oppressive, and (2) that the tax in question is a wholly new tax. The Court finds that Plaintiffs had the same type of notice which the Supreme Court found to be sufficient in *Darusmont*. The addition of IDC's as an item of mini-

1. The 1976 Retroactive Amendment of the Minimum Tax: An Exercise of the Taxing Power or a Taking of Property? 32 Baylor L.Rev. 165 (1980). The Minimum Tax—Is It A Deductible Excise Tax? 31 Baylor L.Rev. 9 (1979); Graff, Rev.Rul. 78–61 and Inland Steel Company. What is the Add-On Minimum Tax, *TAXES— The Tax Magazine*, 161 (Mar.1981).

2. Although the issue was not addressed directly, the Supreme Court in *Darusmont, supra*, obviously considered the tax to be an income tax and applied the customary analysis for income taxes to determine its constitutionality.

mum tax preference had been under discussion since the original report of the House Ways and Means Committee, November 12, 1975. Although the final bill passed reflected a compromise between the House and Senate proposals, there was never any question that the purpose of Section 301 of the original House Bill was to assure that high income individuals pay at least some minimum tax. This was to be accomplished by changing the tax rate, lowering certain deductions, and adding new tax preference items. The planned retroactivity of the tax was announced from its inception.

A realistic evaluation of the history of income tax laws in this country simply does not support the position that this taxpayer had absolutely no reason to believe that any transaction of this sort would be taxed at all. The Legislative History of Title III of the House Bill (10612) did provide notice that intangible drilling costs would be an additional item of tax preference.

Additionally, the purpose of the amendment—to assure that high income taxpayers pay their fair share of taxes—should have alerted Plaintiffs that they might be subject to additional taxes due to the minimum tax. The tax on intangible drilling costs simply cannot fairly be characterized as a wholly new tax. Plaintiffs were aware that they had to pay income taxes; they were aware that they were high income taxpayers; they were aware that they were subject to the minimum tax on tax preference items.

It would be unrealistic for a taxpayer to rely upon the passage of a particular version of any tax bill before Congress. Plaintiffs' lobbying efforts and trips to Washington are an indication that the taxpayers had notice that they might be affected by the bill. Once Plaintiffs were aware that intangible drilling costs were to be added to the list of minimum tax preference items, they should not have relied on Congress to pass a version of the bill which would permit them to escape the tax.

The Court has given careful consideration to the nature of the tax and the circumstances in which it was laid and for the foregoing reasons finds that the minimum tax on intangible drilling costs, as retroactively applied by the Tax Reform Act of 1976, is not so harsh and oppressive as to be invalid.

### Whether the Minimum Tax is Confiscatory as Applied to Plaintiffs

Plaintiffs argue that their tax burden is unconstitutionally confiscatory because they had an adjusted gross income of $193,539.64 and a total tax of $214,875.77.

The standard to be used in deciding whether a tax is unconstitutionally confiscatory is stated in 1 Mertens, *Law of Federal Income Taxation*, Sec. 4.09 (1974):

"To be unconstitutional under the due process clause a taxing statute must be so arbitrary as to amount to a confiscation or a clear and gross inequality or injustice. Only an "extreme and glaring" disregard of fair dealing, with the grievance unreasonably intolerable and "fairly outside the zone of possible debate" will be held to cause a court's intervention."

Looking at Plaintiffs' total tax picture, the tax is not confiscatory. Plaintiffs' gross income was almost $2.5 million. Their AGI was less than 8% of their gross income. Given the purpose for which the minimum tax was passed (to assure that high income taxpayers pay at least a minimum tax) and given the power of Congress to distribute the tax burden, the Court does not find that the tax in question is confiscatory.

### Whether Congress Unconstitutionally Discriminated by Failing to Make the Minimum Tax on IDC's Applicable to Corporations as Well as Individuals

Any classification of taxation is permissible which has a reasonable relation to a legitimate end of governmental action. Taxation is but the means by which the government distributes the burdens of its cost among those who enjoy its benefits. *Welch v. Henry, supra.* No one has ever succeeded in the argument that it is unconstitutional to treat one class of taxpayers

differently from another class, so long as the treatment of the entire class is alike. *Shinder v. Commissioner*, P–H Memo., T.C., ¶ 67.073 (1967), *aff'd*, 395 F.2d 222 (9th Cir. 1968).

█ The Court finds that the purpose of the 1969 minimum tax provisions and their amendments in 1976 to assure that high income individuals pay their fair share of taxes is a rational basis for taxing individuals but not corporations on their deductions of intangible drilling costs. Accordingly, Congress did not unconstitutionally discriminate by taxing individuals but not corporations.

*Income Tax or Excise Tax*

█ The Court has found that the minimum tax on intangible drilling costs is a tax on gain within the meaning of *Eisner v. Macomber, supra,* and *Commissioner v. Glenshaw Glass Co., supra,* and that the tax is an income tax. Accordingly, the Court need not consider whether the tax meets the definition of an excise tax.

The minimum tax is not deductible under sections 162, 164, or 212, and is specifically barred as a deduction by section 275.

## CONCLUSION

The Court finds that for the reasons enumerated, Plaintiffs are not entitled to a refund of $112,988.00. Defendant's Motion for Summary Judgment is GRANTED. Plaintiffs' Motion for Summary Judgment is DENIED.