EDWARD W. NABAKOWSKI AND SUE M. NABAKOWSKI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nabakowski v. Commissioner
Docket No. 19893-80.
United States Tax Court
T.C. Memo 1982-743; 1982 Tax Ct. Memo LEXIS 1; 45 T.C.M. (CCH) 427; T.C.M. (RIA) 82743; December 30, 1982. *1 On Dec. 15, 1975, petitioner purchased the United States and Canadian distribution rights to a motion picture. The film had been produced in Europe and exhibited extensively there prior to petitioner's acquisition of his rights in it. Held: Petitioner derived no income from the film in 1975 and, accordingly, is entitled to no depreciation deduction under sec. 167, I.R.C. 1954, with respect to it for that year under the income forecast method of computing depreciation. Held further: Petitioner is not entitled to an investment credit with respect to the purchase of the film rights, because the film was not new section 38 property as required under sec. 48(k)(1), I.R.C. 1954. The retroactive application of sec. 48(k)(1), I.R.C. 1954, to 1975 did not violate petitioner's right to due process of law. Michel G. Emmanuel, for the petitioner. David R. Smith, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: This case is before the Court on respondent's motion for summary judgment and petitioners' cross-motion for summary judgment pursuant to Rule 121. [1] Respondent determined a deficiency in petitioners' joint Federal income tax for 1975 in the amount of $401,482. *2 The only issues in dispute are (1) whether petitioners are entitled to a deduction for depreciation under section 167 for 1975 with respect to a motion picture entitled "Puzzle," and (2) whether petitioners are entitled to an investment credit under section 38 and related sections with respect to their investment in the motion picture or whether the credit is denied by section 48(k). Petitioners Edward W. Nabakowski and Sue M. Nabakowski are husband and wife. They filed a joint Federal income tax return for 1975 with the Internal Revenue Service Center, Chamblee, Georgia. They resided in Riverview, Florida, at the time they filed their petition in this case. On December 15, 1975, petitioner Edward W. Nabakowski (petitioner) acquired from Etec Cine Productions, S.A. (Etec Cine), a Panamanian corporation, the exclusive right to distribute and exploit a motion picture entitled "Puzzle" in the United States, its possessions and territories, its military installations, and the *3 English-speaking Canadian provinces. Petitioner acquired these rights for the stated sum of $1,200,000, composed of a cash payment of $200,000 and a nonnegotiable, nonrecourse promissory note in the amount of $1,000,000. Petitioner and Etec Cine entered into a written security agreement (chattel mortgage) in connection with petitioner's acquisition of these film rights. "Puzzle" was produced in Europe by European artists and technicians, and none of its production costs is allocable to the United States. The film was exhibited extensively in Europe prior to the acquisition of the United States and Canadian rights by petitioner on December 15, 1975. In their income tax return for 1975, petitioners claimed a depreciation deduction in the amount of $414,213 on their investment in "Puzzle," using the income forecast method of depreciation. Respondent has determined that they are not entitled to any depreciation deduction on the film for 1975 and now moves for summary judgment. Petitioners also claimed an investment credit on the film in the amount of $120,000. Respondent has determined that petitioners are not entitled to any investment credit for their investment in "Puzzle" and *4 now moves for summary judgment. Petitioners move for summary judgment that they are entitled to an investment credit in the amount of $20,000, or, in the alternative, in the amount of $10,000. 1. Depreciation
Depreciation under section 167 for certain types of property, including motion picture films, may be computed according to the income forecast method. Under this method, the depreciation deduction for the taxable year is computed by multiplying the property's basis for depreciation by a fraction, the numerator of which is the income derived from the property during the taxable year, and the denominator of which is the estimated total income to be derived from the property. Rev. Rul. 60-358, 1960-2 C.B. 68, amplified by Rev. Rul. 64-273, 1964-2 C.B. 62. This was the method employed by petitioner in claiming depreciation on "Puzzle" in the amount of $414,213 with respect to his taxable year 1975. Respondent has determined that petitioner derived no income from "Puzzle" during 1975 and, consequently, that he is not entitled to a depreciation deduction on the film for that year. The parties now agree that petitioner, who reported on the cash basis, received on income from the *5 movie in 1975. By application of the fraction for computing the amount of depreciation under the income forecast method in a given year, therefore, petitioner is not entitled to any depreciation deduction in 1975. Siegel v. Commissioner,78 T.C. 659, 692-693 (1982); Wildman v. Commissioner,78 T.C. 943, 950-951 (1982). Accordingly, we find that, with respect to this issue, there is no genuine issue as to any material fact, and that summary judgment may be granted to respondent as a matter of law. Rule 121(b). 2. Investment Credit
Section 38(a) provides for the allowance of a credit in "the amount determined under subpart B of this part," that is, under sections 46 through 50. The amount of the credit is generally equal to 10 percent of the "qualified investment." Section 46(a)(2). The qualified investment is the aggregate of the "applicable percentage" of the basis of each "new section 38 property" and the cost of each "used section 38 property," with, however, no more than $100,000 of the cost of used section 38 property taken into account for the year now in question. Section 46(c)(1); section 48(c)(2)(A) (amended 1981). The "applicable percentage" is generally 100 percent *6 for property with a useful life of 7 years or more. Section 46(c)(2). The term "section 38 property" means tangible personal property subject to the allowance for depreciation and having a useful life of 3 years or more, as well as certain other types of property not involved in this case. Section 48(a)(1). New section 38 property is section 38 property, the original use of which commences with the taxpayer. Section 48(b). Used section 38 property is all other section 38 property. Section 48(c). Petitioner's original claim of a credit of $120,000 in his tax return for 1975 was based on his theory that "Puzzle" constituted new section 38 property in his hands with a useful life of 7 years or more, and that his qualified investment in the film included both the cash payment of $200,000 and the nonrecourse note in the amount of $1,000,000. In several recent cases, however, each involving a taxpayer who invested in a movie with a relatively small cash payment and a large nonrecourse note secured only by the movie itself, this Court has held that the taxpayers had no actual investment in the movie to the xtent of the non-recourse notes, where the amount of the note unreasonably *7 exceeded the fair market value of the movie. Wildman v. Commissioner,78 T.C. 943, 951-952 (1982) and cases cited; Siegel v. Commissioner,78 T.C. 659, 690-691 (1982); Brannen v. Commissioner,78 T.C. 471, 498-499 (1982), on appeal (11th Cir., Aug. 23, 1982). In the light of these cases, petitioner no longer argues that his nonrecourse note of $1,000,000 should be included in his qualified investment in "Puzzle," but instead concedes that the amount of his investment did not exceed the cash payment of $200,000. Petitioner now moves for summary judgment that he is entitled to an investment credit in the amount of $20,000, based on the theory that the film was new section 38 property, or, in the alternative, in the amount of $10,000, based on the theory that the film was used section 38 property and, consequently, that his qualified investment was limited to $100,000 by section 48(c)(2)(A) (amended 1981). Respondent, however, contends that petitioner is not entitled to any investment credit for his investment in "Puzzle," due to the effect of section 48(k). That section, which deals extensively with the investment credit for movie and television films, was enacted as part of the *8 Tax Reform Act of 1976. As we noted in Wildman v. Commissioner,supra at 956: Prior to the Tax Reform Act of 1976, the state of the law with respect to the investment credit as it pertained to films was largely an unsettled affair. Section 48(k) is the congressional promulgation of a comprehensive set of rules designed to clarify this area. Section 48(k)(1)(A)(i)[2] provides that a credit shall be allowable under section 38 with respect to any motion picture film "only if such film * * * is new section 38 property." Sec. 1.48-8(a)(2), Income Tax Regs., provides, in pertinent part, that: Once a qualified film is placed in service in any medium of exhibition in any geographical area of the world, it becomes used property and no investment credit with respect to the film is available to a taxpayer that acquires the film after *9 that time. [3] As stated above, "Puzzle" was exhibited extensively in Europe prior to the acquisition of the United States and Canadian rights by petitioner on December 15, 1975. It is, therefore, clear that the film was used section 38 property in petitioner's hands. Accordingly, *10 we agree with respondent that section 48(k)(1)(A)(i) denies petitioner any investment credit with respect to the film. [4]
We note that, even in the case of used films, an investment credit is available with respect to the taxpayer's "subsequently incurred costs." Section 1.48-8(a)(1), Income Tax Regs. These costs are the cost of preparing prints placed in service within 12 months after the film (or part) is initially released for public exhibition in any medium as well as certain contingent compensation payments to the artists and technicians involved in the film. Section 1.48-8(e)(9), Income tax Regs. Petitioner's payment to Etec Cine to acquire the United States and Canadian rights to "Puzzle" clearly did not constitute subsequently incurred costs, i.e., costs of preparing prints and *11 paying artists and technicians. Petitioner argues, however, that "Puzzle" should be considered new section 38 property in his hands because the version of the film that he purchased differed from the version previously released in Europe in that it had "a new sound track which was dubbed in English and new trailer, new titles, new cast of characters listing and the whole beginning and end of the film was completely redone." We do not agree with this argument. The regulation quoted above provides that a film becomes used property once it is placed in service "in any geographical area of the world." The changes in "Puzzle," as petitioner has enumerated them, were not so extensive that the version he acquired was an essentially new and different film from the one previously exhibited in Europe. [5] Even if "Puzzle" was new section 38 property in his hands, however, petitioner would still not be entitled to an investment credit with respect to it, because it is undenied that none of the film's production costs is allocable to the United States. Accordingly, the claimed credit would be disallowed pursuant to section 48(k) (4) and (5), which limits the "qualified investment" in films to *12 the "qualified United States production costs." [6] *13 Wildman,supra at 954. Petitioner also argues that the retroactive application of section 48(k) to his investment in "Puzzle" denies him the due process of law to which he is entitled under the Fifth Amendment of the Constitution, because his investment was made in 1975, before section 48(k) was enacted in 1976. We disagree. Section 48(k) was enacted, along with the rest of the Tax Reform Act of 1976, on October 4, 1976. Section 804, Pub. L. 94-455, 90 Stat. 1525, 1591. Section 804(e)(1) of that act provides generally that section 48(k) applies to taxable years beginning after December 31, 1974, and thus expressly applies to the calendar year 1975. Paragraph (1) of section 48(k), restricting the investment credit for films to new section 38 property, is given even greater retroactivity by section 804(d) of the act, which provides that section 48(k)(1) shall also apply to "any motion picture film or video tape placed in service in any taxable year beginning before January 1, 1975." Congress has, therefore, provided expressly that the retroactivity of section 48(k)(1) *14 shall be unlimited. As noted above, petitioner made his investment in "Puzzle" on December 15, 1975. The power of Congress to enact tax legislation retroactive in its effect has long been the subject of litigation. Over a century ago, it was stated, with respect to an income tax enacted in 1870 imposing a tax on 1869 income, that: The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted; must less can it be doubted that it could impose such a tax on the income of the current year, though part of that year had elapsed when the statute was passed. Stockdale v. Insurance Companies,87 U.S. 323, 331 (1873). Petitioner agrees with only the second part of this statement. He concedes that Congress has the power to pass legislation which changes retroactively the tax consequences of transactions completed earlier in the year of enactment, but argues that due process is violated when tax legislation, such as section 48(k), is made retroactive to years prior to the year of enactment. Petitioner cites no authority for this proposition, however, and both the Supreme Court and this Court have *15 held to the contrary. In Welch v. Henry,305 U.S. 134 (1938), the Supreme Court held that a Wisconsin statute enacted in 1935 and imposing a tax on previously exempt dividends received in 1933 did not violate the constitutional guarantee of due process. [7] The Court propounded no rigid standard defining the extent of permissible retroactivity, but stated (at 147) that: In each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation. *16 This Court, in a recent case involving the same Code section and taxable year that are presently at issue, considered and upheld the constitutionality of the retroactive application to 1975 of section 48(k)(4), limiting the amount of the credit base to the "qualified United States production costs." Wildman v. Commissioner,78 T.C. 943 (1982). In Siegel v. Commissioner,78 T.C. 659 (1982) even greater retroactivity was approved, although the question of constitutionality was not specifically raised. In that case, we sustained the Commissioner's denial, pursuant to section 48(k)(1), of an investment credit claimed with respect to a used movie for the calendar year 1974. The cases discussed above, particularly Wildman and Siegel, clearly point to the conclusion that petitioner's right to due process was not violated by the application of the statute to a transaction that occurred in 1975, less than a year prior to its enactment. [8] We note that petitioner was put on notice of congressional consideration of the provision enacted as section 48(k) by the issuance on November 12, 1975, of H. Rept. No. 94-658 (1975), 1976-3 C.B. (Part 2) 695, in which the Committee on Ways and Means reported *17 favorably on H.R. 10612, which later became the Tax Reform Act of 1976, and recommended its passage by the full House of Representatives. The report described the proposed limitation of the availability of the investment credit to new films, and also announced the intention to apply the limitation retroactively. 1976-3 C.B. (Part 2) 880-890. As stated by the Supreme Court in United States v. Hudson,299 U.S. 498, 500 (1937): As respects income tax statutes it long has been the practice of Congress to make them retroactive for relatively *18 short periods so as to include profits from transactions consummated while the statute was in process of enactment or within so much of the calendar year as preceded the enactment; and repeated decisions of this Court have recognized this practice and sustained it as consistent with the due process of law clause of the Constitution. Petitioner's investment in "Puzzle" was clearly a transaction "consummated while the statute was in process of enactment." Petitioner's constitutional argument must, accordingly, be rejected. We conclude that there is no genuine issue as to any material fact and, for the reasons set forth above, that respondent is entitled to summary judgment as a matter of law. Rule 121(b). Accordingly, respondent's motion for summary judgment will be granted and petitioner's cross-motion for summary judgment will be denied. To reflect the foregoing, An appropriate order and decision will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted. All references to Rules are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 48(k)(1)(A)(i) provides that: (k) Movie and Television Films.-- (1) Entitlement to credit.-- (A) In general.--A credit shall be allowable under section 38 to a taxpayer with respect to any motion picture film or video tape-- (i) only if such film or tape is new section 38 property (determined without regard to useful life) which is a qualified film, * * *↩
3. An exception to the rule stated in sec. 1.48-8(a)(2), Income Tax Regs. applies-- * * * where parts of a film have been sold before the film or any of its parts have been placed in service in any medium of exhibition in any geographical area of the world, * * * For purposes of this section, "a part" of a film means the exclusive right to display a qualified film in one or more mediums of exhibition in one or more geographical areas over the entire period of substantial exploitation of the film in the medium(s) in the geographical area(s). When this exception applies, "each part is new section 38 property until that part is first placed in service." Sec. 1.48-8(a)(2), Income Tax Regs.
This exception does not apply to petitioner's film, however, because he bought his "part" of the film, i.e., the United States and Canadian rights, after the film had been placed in service in another "geographical area of the world."↩
4. Respondent also argues that no credit is allowable because, at the time the film was first placed in service, petitioner had no ownership interest in the film. Sec. 48(k)(1)(A)(ii) and (k)(1)(C); sec. 1.48-8(a)(4)(ii) and (a)(5), Income Tax Regs.↩ Having concluded that petitioner's investment does not qualify for the reasons stated above, it is unnecessary for us to consider this additional argument.
5. In concluding that there is no genuine issue of fact as to whether the dubbing and other adaptations were so extensive as to create a "new" film, account has been taken of the absence of any factual basis for the argument in the stipulation of facts, by way of affidavit, or otherwise in the manner contemplated by Rule 121, i.e., petitioner has not shown how the dubbing and other adaptations altered the film to make it a "new" one. Moreover, petitioner by his cross motion for summary judgment, in effect, concedes that there is no genuine material issue of fact as to this point. ↩
6. Such costs include direct production costs, overhead costs, costs of screen rights of the material being filmed, and certain other costs allocable to the United States. Sec. 48(k)(5); sec. 1.48-8(e) and (f), Income Tax Regs.
Petitioner has not argued that the new elements of his version of "Puzzle," the English sound track and so on, were separate items of property from the film as a whole and qualified as new section 38 property in their own right. Even if we were to adopt this theory, however, we would still have to sustain respondent's denial of the claimed credit, because there were no qualified United States production costs associated with the film or with any of its parts.
7. Because a State statute was involved, the due process clause construed in Welch v. Henry was the one in the Fourteenth Amendment, rather than the one in the Fifth Amendment, with which we are concerned in the present case. The same criteria apply, however. The Fourteenth Amendment, it has been held, legitimately operates to extend to the citizens and residents of the States the same protection against arbitrary state legislation, affecting life, liberty and property, as is offered by the Fifth Amendment against similar legislation by Congress; * * *. Hibben v. Smith,191 U.S. 310, 325↩ (1903)
8. For cases dealing with the constitutionality of statutes retroactive to the beginning of the taxable year in which they were enacted, see United States v. Darusmont,449 U.S. 292 (1981); Westwick v. Commissioner,636 F.2d 291 (10th Cir. 1980), affg. a Memorandum Opinion of this Court; Buttke v. Commissioner,625 F.2d 202 (8th Cir. 1980), affg. 72 T.C. 677 (1979); cf. Picchione v. Commissioner,440 F.2d 170, 173 (1st Cir. 1971), affg. 54 T.C.1490 (1970); Kearns v. Commissionr,73 T.C. 1223↩ (1980), which applied the statute to income received in the tax year pursuant to a transaction which occurred several years before the taxable year at issue therein.